UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                                      |   |                      |
|------------------------------------------------------|---|----------------------|
| JUAN PABLO ALICEA,                                   ) |   |                      |
|     Petitioner,                  ) |   |                      |
|                                                      ) |   |                      |
| v.                                                   ) | Civil Action No.     |
|                                                      ) | 14-40059-TSH         |
|                                                      ) |   |                      |
| STEVEN SILVA, SUPERINTENDENT,                        ) |   |                      |
| SOUZA-BARANOWSKI CORRECTIONAL CENTER,                ) |   |                      |
|     Respondent.                  ) |   |                      |

## MEMORANDUM OF DECISION AND ORDER
September 26, 2017

**HILLMAN, D.J.**

### Background

Juan Pablo Alicea ("Alicea" or "Petitioner") has filed a Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (Docket No. 1)("Petition") against Steven Silva, Superintendent, Souza-Baranowski Correctional Center ("Respondent")[1]. Petitioner was convicted in Massachusetts Superior Court of murder in the first degree and assault and battery with a dangerous weapon. He was sentenced to life in prison without the possibility of parole on the first degree murder charge and 8-10 years on the assault and battery with a dangerous weapon charge, to be served consecutively. The Supreme Judicial Court of Massachusetts ("SJC") affirmed his conviction on April 12, 2013.

---

[1] Alicea names Bruce Gelb as the Respondent in this case. Gelb was the Superintendent of Souza-Baranowski Correctional Center at the time that he filed his Petition. Steven Silva has since replaced Gelb and is

Alicea asserts the following ground for relief in his Petition:

**Ground One**: His Sixth Amendment Confrontation Right and/or his Fourteenth Amendment Due Process Right were violated when the trial judge refused to let him call a witness, who he maintains was the actual murderer, based on the witness's invocation his Fifth Amendment privilege—the trial judge "secreted" evidence that established that the witness's invocation of the Fifth Amendment privilege was "defective."

Alicea has exhausted state-court remedies with respect to the single ground for relief asserted in his Petition. For the following reasons, the Petition is *denied*.

## **Facts**[2]

### The Underlying Crime

On the afternoon on May 15, 2002, at about 3 p.m., Larisa Andujar ("Andujar"), who was at the time a heroin user, woke up and injected three bags of heroin. She was with her boyfriend, Hylas Strange III ("Strange"). Strange received a telephone call from Alicea, who was a friend of both he and Andujar. Alicea told Strange that he had figured out that Strange had not stolen a stereo from his sister, and he was no longer upset with him. Alicea, who was located at 833 Main Street in Worcester, invited Strange and Andujar over telling Strange that he was in possession of some heroin.

That same afternoon, Petra Moreno ("Moreno") arrived at her apartment on the third floor of 833 Main Street to find signs of a break-in and two men, including Alicea, standing on the third-floor porch. Alicea identified himself as the brother of Moreno's next-door neighbor and told Moreno that someone called "Gucci," a nickname by which Strange was known, had

---

automatically substituted as Respondent.
[2] The following factual summary is taken essentially verbatim from the decision of the SJC affirming Alicea's conviction. *See Commonwealth v. Alicea*, 464 Mass. 837, 838-41, 985 N.E.2d 1197 (2013).

broken into the neighbor's apartment and probably had broken into Moreno's apartment. Alicea told Moreno that they were "going to take care of it."

After Strange's telephone conversation with Alicea, Andujar's mother drove Andujar and Strange to the corner of Main Street and Allen Street in Worcester. Andujar and Strange walked to the parking lot of 833 Main Street, looked up, and saw Alicea standing on the third-floor porch with another person, Eliezer Herrera ("Herrera"). Alicea motioned for Andujar and Strange to climb the steps. When they reached the second-floor landing, Strange ascended the first two steps to the third floor in front of Andujar, and as Andujar looked down to take her first step, she heard a gunshot and looked up to see Alicea shooting at them. Strange jumped back off the steps, jumped in front of Andujar, pushed her to the side, took two steps, and then fell after another shot. Andujar looked up and saw Alicea smile, then frown, and run out of sight. Strange was lying on the porch, nonresponsive, with his eyes open and blood pooling around his head. Strange sustained a total of four gunshot wounds, including a fatal wound to his head, and a bullet grazed Andujar's right shoulder. Andujar then ran down the steps and up the hill to her mother's vehicle.

About twenty minutes after Moreno spoke with Alicea on the porch, she heard between three and five gunshots. Moreno ran outside and saw a body on the second-floor porch and then saw Andujar running along Allen Street.

### Witness Claim of Fifth Amendment Privilege.

At a hearing on the parties' pretrial motions on January 16, 2004, the judge reviewed the Commonwealth's proposed application for a grant of immunity pursuant to Mass.Gen.L. ch. 233, § 20E, for Herrera, a proposed witness, whom Alicea argued was the shooter. The judge

3

concluded that the hearing on the Commonwealth's immunity application could not take place at that time because the prosecutor had not notified the Massachusetts Attorney General or other district attorneys of the application, as required by the statute. The judge decided instead to determine later that day whether the proposed witness had a valid basis for a claim of Fifth Amendment privilege, and to hear the full immunity application at a later point in time, after the Commonwealth had satisfied the notice requirements. During the hearing, counsel for Herrera, citing *Commonwealth v. Martin*, 423 Mass. 496, 668 N.E.2d 825 (1996), requested that a voir dire of Herrera be conducted *in camera* to assess his client's claim of privilege. Over defense counsel's objection to an *in camera* voir dire of "a potentially devastating witness like Mr. Herrera," the judge conducted a closed hearing to determine whether Herrera would assert the Fifth Amendment if called to testify and whether such a claim of privilege would be valid. The judge excluded the defendant and defense counsel from the hearing, but permitted the prosecutor to remain.

At the end of the hearing, the judge found that Herrera had validly invoked his Fifth Amendment privilege "based on [the judge's] understanding of Mr. Herrera's involvement in the case ..., the facts and circumstances giving rise to a shooting and resulting in charges against [the defendant], and bearing in mind Mr. Herrera's [unrelated] pending legal cases in the Worcester District Court...." The judge initially impounded the portion of the transcript containing the content of this hearing, but later made it available to the parties at the request of the defendant's appellate counsel. Nothing in the record indicates that the Commonwealth pursued further an immunity application for Herrera; in any event, Herrera was not called as a witness.

Post-Trial Proceedings

Alicea filed a direct appeal from his conviction to the SJC in 2004. On February 26, 2010, while his appeal was still pending, Alicea filed a motion for new trial under Mass.R.Crim.P. 30(b) on the grounds that there was a fundamental denial of his confrontation clause rights under the Sixth Amendment and his Fourteenth Amendment Due Process Rights when the trial judge barred defense counsel from the hearing on whether to exclude the trial testimony of a witness, who he claimed to be the shooter, based on the witness's invocation of his Fifth Amendment privilege. He also asserted that preventing him from calling the witness violated his right to present a complete defense.

The trial judge, denying the motion for new trial, found that it was not error to exclude defense counsel from the hearing and that Herrera had a valid Fifth Amendment claim. Moreover, the trial judge stated: "[c]ontrary to Alicea's claim that *he* sought to call Herrera as a trial witness, ... the trial transcripts show otherwise. As reflected in a transcript of pretrial proceedings …, Herrera's name first appears in connection with the *Commonwealth's* intention to immunize him." (emphasis in original). The trial judge also noted that Alicea's defense counsel had referred to Herrera as "a potentially devastating witness." Alicea appealed the denial of his motion for a new trial to the SJC. The SJC consolidated Alicea's direct appeal with his appeal of the denial of his motion for a new trial.

In his appeal to the SJC, Alicea stated that he had wanted Herrera to testify on his behalf, however, the Commonwealth posited that Herrera had a significant Fifth Amendment Right that he would assert. He asserted that the trial judge held a constitutionally defective hearing on Herrera's right to invoke his Fifth Amendment privilege. More specifically, he asserted that the

hearing violated his Fourth, Fifth and Sixth Amendment Rights under the Constitution. In denying his appeal, the SJC first found that Alicea mischaracterized the record when he claimed that Herrera was a defense witness. Instead, the SJC agreed with the trial judge that Herrera's name first came up when the Commonwealth filed a notice of its intent to immunize him. The SJC further pointed out that at the closed hearing on whether Herrera had a right to invoke the privilege, the judge told Herrera that the Commonwealth intended to call him as a witness. The SJC also noted that Alicea's counsel had referred to Herrera as "a potentially devastating witness." The SJC also found that given the defense theory (that Herrera was the shooter not Alicea) there was ample reason for the defense not to call Herrera: if the theory was true, then "this information would by itself justify a claim of privilege; if false, it would lead Herrera to deny the defense theory and identify [Alicea] as the shooter." The SJC then went on to address the merits of Alicea's claim after "[s]etting aside the mischaracterization", *i.e.*, that it was Alicea who intended to call Herrera as a witness.

As to the merits, the SJC, citing to *Pixley v. Commonwealth*, 453 Mass. 827, 832, 906 N.E.2d 320 (2009), began its analysis by reiterating its prior holding that "[a] witness may refuse to testify unless it is perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly have such tendency to incriminate." The court went on to note that "the privilege 'extends not only to answers that would in themselves support a conviction, but also to those that would furnish a link in the chain of evidence needed to prosecute the witness.'" (internal citations omitted). As to the latter point, the SJC cited state case law and *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814 (1951). Applying this standard, the SJC found that there was ample evidence in the record to

support a finding that Herrera had a Fifth Amendment privilege: 1) if the defense theory were correct, Herrera's testimony could implicate him in the case; 2) there was evidence that at the time of the murder, Herrera and Alicea were in possession of narcotics (the reasons Strange and Andujar were coming to see Alicea) which would have exposed Herrera not only to drug charges, but potentially to a charge of conspiracy to commit murder or join venture as a participant in a murder; and 3) his testimony could have implications for several unrelated charges then pending against him in state court. The SJC also found that it was not error for the judge to have excluded Alicea's trial counsel from the closed hearing. The Court first held that to the extent that the hearing could be characterized as the first part of the Commonwealth's immunity application under Mass.Gen.L. ch. 233, §20E, rather than a privilege hearing, exclusion of defense counsel was appropriate. The SJC then held that even if it were characterized as a privilege hearing, failure to permit his counsel to attend did not prejudicial because an *in camera* hearing was not necessary in this case: The information disclosed by Herrera's counsel in open court, with Alicea's counsel present, concerning the bases for Herrera's Fifth Amendment Privilege claim was by itself, sufficient to support the claim. The SJC further found that it was not error to bar defense counsel from the hearing because the privilege claim belongs to the potential witness not the defendant and therefore, defense counsel had no right to attend.

**Discussion**

Standard of Review

The standard of review for habeas corpus petitions brought by state prisoners is set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Under the AEDPA:

> a federal court may grant habeas relief if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." This means we look to the Supreme Court's holdings, as opposed to dicta, at the time the state court rendered its decision, while employing the following criteria.
>
> An adjudication will be contrary to clearly established law if the state court 'applies a rule that contradicts the governing law set forth' by the Supreme Court or 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'". On the other hand, a state court adjudication constitutes an unreasonable application "if the state court identifies the correct governing legal principle from the Supreme Court's then-current decisions but unreasonably applies that principle to the facts of the prisoner's case." An "'*unreasonable* application of federal law is different from an *incorrect* application of federal law,'" and a state court is afforded deference and latitude.
>
> The second scenario justifying habeas relief is if the state court adjudication led to "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Though this means that a federal court will be taking a closer look at a state court's findings of fact, the fundamental principle of deference to those findings still applies.
>
> A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."

*Hensley v. Roden*, 755 F.3d 724, 730-31 (1st Cir. 2014)(internal citations and citations to quoted authorities omitted)(emphasis and alterations in original). In administering these standards, the

state court's factual findings are presumed to be correct, and they can be overcome only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## Whether Alicea is Entitled to Relief

First, Alicea's claim fails because the SJC found that he did not intend to call Herrera as a witness and therefore, he was not prejudiced by the finding that he (Herrera) had a right to invoke his Fifth Amendment privilege. Alicea contests this finding, but in doing so, he ignores that the state court's factual findings are presumed to be correct unless overcome by clear and convincing evidence. The SJC, citing to ample evidence in the record, found that it was the Commonwealth that proposed Herrera as a potential witness, *not* Alicea. Alicea does not cite to *any* record evidence which would overcome the presumption that the SJC's findings are correct, instead he simply asserts that this finding must be wrong because the court failed to "consider the actual fact that any defense counsel worth having in a capital defense would want to put a third party culprit evidence before the trier of fact."[3]

Alicea's claim fares no better on the merits. He makes only a brief, conclusory statements that the trial judge's refusal to compel Herrera to testify violated his Fourth, Fifth and Sixth Amendment rights, without providing any cogent legal analysis to support his claims. He cites primarily to state case law and the gist of his legal arguments and analysis is to suggest the SJC conspired to insulate the hearing judge's "illegitimate conduct." After parsing through the entirety of his argument, the best the Court can determine is that he is arguing that is right to a fair trial was violated because the trial judge refused to let him present his defense by calling Herrera as a witness. He cites to *Holmes v. South Carolina*, 547 U.S. 319, 126 S.Ct. 1727 (2006);

---
[3] Alicea also ignores the fact that the SJC pointed out a myriad of reasons as to why the defense would have

*Ohio Bell Telephone Co. v. Public Utilities Comm'n of Ohio,* 301 U.S. 292, 57 S.Ct. 724 (1937) and *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 112 S.Ct. 1715 (1992), to support his claim. It is not clear from his brief whether he takes the position that the SJC's decision relied solely on state law precedent and ignored the federal nature of his claim and therefore, is entitled to no deference (meaning this Court must review the claim *de novo*), or whether this Court should find that the SJC's decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.

The Respondent, on the other hand, has provided a comprehensive legal analysis as to why Petitioner's claim fails on the merits. Given the legal soundness of the Respondent's brief, there is no point in this Court simply writing for writings sake. Accordingly, I am adopting the Respondent's legal arguments and analysis as set forth in Respondent's Memorandum of Law in Opposition To Petition For Writ of Habeas Corpus (Docket No. 15) and denying his Petition for the reasons set forth therein.

## Conclusion

For the foregoing reasons, the Petition Under 28 U.S.C. § 2254 For Writ OF Habeas Corpus By A Person In State Custody (Docket No. 1), is ***denied***.

## Certificate of Appealability

The statute governing appeals of final orders in habeas corpus proceedings provides that an appeal is not permitted "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a

---

chosen not to call a "potentially devastating witness" to testify.

"substantial showing," a petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595 (2000) (internal quotation marks omitted). This is a low bar; a claim can be considered "debatable" even if every reasonable jurist would agree that the petitioner will not prevail. *Miller-El v. Cockrell*, 537 U.S. 322, 338, 123 S.Ct. 1029 (2003). In ruling on an application for a certificate of appealability, a district court must indicate which specific issues satisfy the "substantial showing" standard. 28 U.S.C. § 2253(c)(3).

I am denying the certificate of appealability with respect to Petitioner's claim. First, his claim is premised on a complete mischaracterization of the record, *i.e.*, that Herrera was to be called as a defense witness. Moreover, considering his claim on the merits, I do not find that reasonable jurists could debate whether the claim was adequately addressed by the Court, nor are the issues presented adequate to deserve encouragement to proceed further. Therefore, with respect to his sole claim for relief, a certificate of appealability is denied.

**So Ordered.**

/s/ *Timothy S. Hillman*
TIMOTHY HILLMAN
DISTRICT JUDGE